J-A02008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.L.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: S.N.S., MOTHER | : | |
| | : | No. 1097 WDA 2024 |

Appeal from the Order Entered August 13, 2024
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2024-226

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED:  March 28, 2025**

S.N.S. (Mother) appeals from the August 13, 2024 order that granted the petition filed by G.M.K. (Paternal Grandmother) and W.P.K. (Paternal Grandfather)[1] (collectively, Paternal Grandparents) seeking the involuntary termination of Mother's parental rights to her biological son, J.L.M. (the Child) (born August 2019), pursuant to the Adoption Act.[2]  *See* 23 Pa.C.S.A. § 2511(a)(1), (a)(2), and (b).  After review, we affirm.

_____

[1] W.P.K. is technically the Child's paternal step-grandfather.  The orphans' court referred to W.P.K. as Paternal Grandfather, as do we for purposes of this memorandum.

[2] By the same order, the court also involuntarily terminated the parental rights of the Child's father, J.L.M. (Father, and collectively with Mother, Parents). Father did not file an appeal or participate in the instant appeal.

The orphans' court set forth the relevant facts and procedural history as follows:

> . . . Following [the Child's] birth, Parents and the Child resided with Paternal Grandparents at Paternal Grandparents' residence until January 2020.  In January of 2020, Father was arrested[,] and Mother and the Child moved out of Paternal Grandparent's home and into [maternal grandmother's] home . . . where they resided until June of 2020.  . . .  In June 2020, . . . Paternal Grandparents [received the Child] as part of an informal weekend visitation.  When Paternal Grandparents attempted to contact Mother about returning the Child, they were unable to determine her whereabouts [and the Child has remained with them since].  . . .  There was evidence that Mother [had] made arrangements with Paternal Grandparents that entailed them caring for the Child while she attended drug rehabilitation treatment versus Mother abandoning the Child.  It appears that Mother executed a document temporarily granting "guardianship" to Paternal Grandparents . . . .  Regardless, Mother never made it to drug rehabilitation [at that time] and was instead arrested and incarcerated . . . .

Orphans' Court Opinion, 8/13/24, at 2-3 (cleaned up) (footnotes and citations to the record omitted).

Since that time, the record demonstrates that Mother has been "in and out of jail" due to criminal convictions relating to her heroin addiction.  N.T., 7/29/24, at 38, 100; *see also id.* at 17-18, 26, 68.  Specifically, Mother was arrested and incarcerated in June 2020, on charges relating to the intentional possession of a controlled substance, use/possession of drug paraphernalia, driving with a suspended or revoked license, and driving under the influence. In July 2021, Mother was released on bail.  *See* Petitioner's Exhibit 6.  Upon her release, she completed a one-month drug rehabilitation program but

relapsed and, as best we can discern, was re-incarcerated within a "couple months." **See** N.T., 7/29/24, at 97.

In January 2022, Mother pleaded guilty to the above charges. She was sentenced in March 2022, to consecutive terms of one to twelve months' incarceration, one year probation, sixty days' incarceration, and ten to sixty days' incarceration, respectively. **See** Petitioner's Exhibit 6. In May 2022, Mother was released on parole. However, in or about April 2023, Mother was re-incarcerated for violating her parole, and she remained incarcerated until September 2023. **See id.**; N.T., 7/29/24, at 99-100. Six months later, in March 2024, Mother was arrested on new drug charges and re-incarcerated. In addition, Mother's parole was revoked. **See** Petitioner's Exhibit 6; N.T., 7/29/24, at 99-100. According to Mother, prior to her most recent incarceration, Mother did not contact Child because she was "'high" all the time and had an "active [drug] addiction." N.T., 7/29/24, at 101. Significantly, Mother remained incarcerated at the time of the subject termination hearing. **See id.** at 7, 85, 101.

In the meantime, Paternal Grandparents filed for custody of the Child in July 2021. **See** N.T., 7/29/24, at 8-9, 19, 39-40. Pursuant to interim order dated September 27, 2021, the court awarded Paternal Grandparents primary

physical custody and shared legal custody with Parents.[3] *See* Petitioner's Exhibit 3. Thereafter, by interim consent order dated July 26, 2022, the court awarded Paternal Grandparents sole legal custody, maintained their primary physical custody, and awarded Parents supervised physical custody.[4] Specifically, Mother was awarded physical custody for periods of no less than three hours per week to be supervised by the maternal grandparents. *See id.*; N.T., 7/29/24, at 40. By order dated February 3, 2023, the court modified Mother's award by directing that Paternal Grandparents supervise Mother's custody, which she was to exercise "as the parties mutually agree." *See* Petitioner's Exhibit 3; N.T., 7/29/24, at 11, 40. In total, Mother exercised one period of custodial time, which occurred in July 2022. *See* N.T., 7/29/24, at 13-14, 40, 52-53, 55-56, 79-80, 82.

On February 26, 2024, Paternal Grandparents filed a petition to involuntarily terminate Mother's parental rights to the Child pursuant to

---

[3] We are unable to discern what, if any, physical custody was awarded to Parents.

[4] Although the court identified its award of custodial time to Mother and Father as "partial physical custody," defined by the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, as "[t]he right to assume physical custody of the child for less than a majority of the time," given the reference to supervision, we deem the award more properly "supervised physical custody," defined as, "[c]ustodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights." 23 Pa.C.S.A. §§ 5322(a), 5323(a).

Section 2511(a)(1), (2), and (b).[5, 6]  The orphans' court held an evidentiary hearing on July 29, 2024.  Mother was present and represented by counsel. Paternal Grandparents testified.  Additionally, Mother testified on her own behalf.

Pursuant to order dated August 8, 2024, and entered August 13, 2024, the orphans' court granted Paternal Grandparents' petition and involuntarily terminated Mother's parental rights to the Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b).  The court contemporaneously issued an opinion setting forth its reasoning.  On September 6, 2024, Mother filed a timely notice

---

[5] A contemporaneous report of intention to adopt was not required to be filed. **See** 23 Pa.C.S.A. § 2531(c) (**"**No report shall be required when the child is the child, **grandchild**, stepchild, brother or sister of the whole or half blood, or niece or nephew by blood, marriage or adoption of the person receiving or retaining custody or physical care.") (emphasis added).

[6] Our Supreme Court has mandated that appellate courts *sua sponte* "verify that the orphans' court indicated that the attorney [in a dual role of guardian *ad litem* (GAL) and legal counsel] could represent the child's best and legal interests without conflict." **In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020); **see also** 23 Pa.C.S.A. § 2313(a).  Counsel representing a child's legal interests must advocate for the child's preferred outcome even if counsel does not agree with it, whereas the GAL representing a child's best interests must express "what he or she believes is best for child's care, protection, safety, and wholesome physical and mental development, regardless of whether the child agrees." **In re T.S.**, 192 A.3d 1080, 1082 n.2 (Pa. 2017).

Our review of the record in this case reveals that the orphans' court appointed Richard Corcoran, Esquire as "attorney for the Child[]."  Preliminary Order, 3/7/24.  To the extent that the orphans' court appointed Attorney Corcoran in a dual role, the court expressly found that counsel could represent the Child's best and legal interests without conflict.  **See** N.T., 7/29/24, at 4-5.  As such, we find that the orphans' court fulfilled the mandate of **K.M.G.** and Section 2313(a).

- 5 -

of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Thereafter, the orphans' court filed a Rule 1925(a) opinion on September 11, 2024, relying on its prior opinion.

On appeal, Mother raises the following questions for our review:

A. Whether the [orphans' court] erred as a matter of law and/or manifestly abused its discretion in determining the Petitioners sustained their burden of proving the termination of [Mother's] parental rights is warranted under Sections 2511(a)(1) and 2511(a)(2) of the Adoption Act?

B. Even if this Court concludes the Petitioners established statutory grounds for the termination of Mother's parental rights, whether the [orphans' court] nevertheless erred as a matter of law and/or manifestly abused its discretion in determining the Petitioners sustained their additional burden of proving the termination of Mother's parental rights is in the best interests of the Child?

Mother's Brief at 7 (suggested answers omitted).[7]

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration

_____

[7] Child's attorney filed a brief in support of the involuntary termination order.

of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-830 (Pa. Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b). This Court need only agree with the trial court's determination as to any one subsection of Section 2511(a), in addition to

Section 2511(b), in order to affirm termination. *See In re B.L.W.*, 843 A.2d

380, 384 (Pa. Super. 2004) (*en banc*).

Accordingly, we analyze the decrees involuntarily terminating Mother's

parental rights to Children pursuant to Section 2511(a)(2)[8] and (b) which

provide, in relevant part, as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S.A. § 2511(a)(2), (b).

To prove the applicability of Section 2511(a)(2), the party petitioning

for termination must establish: "(1) repeated and continued incapacity, abuse,

---

[8] Given our disposition relative to Section 2511(a)(2), we need not review Section 2511(a)(1) and make no conclusions as to the orphans' court's findings with respect to Section 2511(a)(1). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *See In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted). Grounds for termination pursuant to Section 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citation omitted).

We have long recognized that "[p]arents are required to make diligent efforts towards the reasonably prompt assumption of full parental duties." *Id.* (citation omitted). Relatedly, while a parent's incarceration is not automatically dispositive with respect to termination, it is a relevant and potentially determinative factor to consider pursuant to Section 2511(a)(2). Specifically,

> incarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under [Section] 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012); *see id.* at 830.

With respect to Section 2511(a)(2), Mother claims that Child is not without essential parental care inasmuch as, with Mother's agreement, Child resides in placement with Paternal Grandparents. Mother asserts:

> Mother coordinated for the Child to be with Paternal Grandparents. Mother coordinated signing a temporary guardianship order. Mother participated in, agreed to and continues to agree to the

- 9 -

custody arrangement. The Child's current placement and custody was done by Mother on behalf of the Child and his best interest. Mother was performing an essential parental duty [] by making arrangements to ensure her child was being cared for and that Paternal Grandparents had temporary guardianship authority and custody in place while she was unable to be present day to day due to her struggles with addiction, which she knew would have been harmful for the Child to be around. [Mother] has not caused the Child to be without essential parental care. All of her actions ensured there was parental care, in the form of temporary guardianship and custody with Paternal Grandparents.

Mother's Brief at 16-17 (cleaned up). In addition, Mother claims that the court abused its discretion because she has remedied her incapacities involving her addiction and incarceration. *See id.* at 20. Specifically, Mother speculates that she will be released from prison; she has arranged for suitable housing; and that she has completed substance abuse treatment. *See id.*; *see also* N.T., 7/29/24, at 93 (Mother's testimony that she hoped to be released from prison "within two and [one]-half weeks"). Mother is not entitled to relief.

The orphans' court concluded that Mother's enduring substance abuse and incarcerations resulted in (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. Orphans' Court Opinion, 8/13/24, at 12. Of importance to the court, Mother remained incarcerated at the time of the subject termination hearing. *See id.* at 14. The record does not indicate when sentence will be

fully served. However, as discussed *infra*, the court did not credit Mother's testimony that she hoped to be released from prison within two and one-half weeks. Moreover, the court emphasized that Mother "indicated a desire to keep the current custody plan in place with Paternal Grandparents having full custody of [the Child] for the foreseeable future until [she is] able to get [her life] in order." *Id.*

A review of the record supports the orphans' court's findings under Section 2511(a)(2). Due to Mother's history of drug abuse and incarceration, Child has resided in Paternal Grandparents' care and custody since June 2020. *See* Petitioners' Exhibits 5 & 6; N.T., 7/29/24, at 96-101. As indicated *supra*, Mother was incarcerated in approximately June 2020 on drug charges, and she remained incarcerated for one year. *See* N.T., 7/29/24, at 86-88, 96. Mother completed a one-month rehabilitation program after her release in the summer of 2021, but she then relapsed. *See id.* at 97. Mother continued to struggle with drug abuse and was incarcerated several more times over the next three years due to continued drug use. *See id.* at 96-101. Mother was arrested and incarcerated in April 2023. *See id.* at 100. Subsequent to her release in September 2023, Mother again relapsed and was arrested and incarcerated in March 2024. *See id.* at 100-101. She remained incarcerated at the time of the subject termination hearing. *See id.* at 7, 85, 101.

Given this ongoing, unresolved behavior, it is thus speculative at best when Mother will be in a position to care for the Child. Mother reported, with

no additional evidentiary support, that she expected to be released from her current incarceration "[h]opefully within two and [one]-half weeks" from the date of the termination hearing. *Id.* at 93. She testified that, upon her release, she plans on taking steps to "start rebuilding [her] life." *Id.* She also expressed her intent to maintain the current custody arrangement and have the Child remain with Paternal Grandparents for the time being. *See id.* at 90. Mother testified, "I'm still perfectly fine with [Paternal Grandparents having custody of the Child.] I wouldn't pick anywhere else for him to be." *Id.* Indeed, upon inquiry by the court as to where the Child should go, Mother acknowledged that the Child could not be placed with her at the current time. She responded, "I'm not going to say with me right away. I don't think I could provide what [Paternal Grandparents] provide for him right now. . . ." *Id.* at 106.

Based on the foregoing, we discern no abuse of discretion by the court in concluding that termination pursuant to Section 2511(a)(2) is warranted. The record demonstrates that Mother's repeated and continued incapacity due to ongoing drug abuse and incarceration has caused the Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being. Further, the conditions and causes of Mother's incapacity cannot or will not be remedied. *See A.H.*, 247 A.3d at 443; *S.P.*, 47 A.3d at 830.

Since the orphans' court's findings with respect to at least one subsection of Section 2511(a) are supported by the certified record, we now turn to a review of the court's findings pursuant to Section 2511(b). Section 2511(b) requires the court to "give primary consideration to the developmental, physical and emotional needs and welfare of the child" when considering whether to involuntarily terminate parental rights. 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. This determination "must be made on a case-by-case basis," with an eye towards "each child's specific needs." *Interest of K.T.*, 296 A.3d 1085, 1105-1106 (Pa. 2023). Overall, this inquiry is neither formulaic, nor mechanical. *See id.*

This inquiry must include consideration of the bond between the parent and the child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has explained, however, that "only a necessary and beneficial" parental bond should be maintained. *K.T.*, 296 A.3d at 1009. A bond is considered to be "necessary and beneficial" if its severance would cause extreme emotional consequences or significant, irreparable harm. *Id.* at 1109-1110. The evaluation of a child's respective bonds is "not always an easy task." *Id.* at 1106 (citation omitted). "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Additionally, it is "within the discretion of the orphans' court to prioritize the safety and security" of children "over their bonds with their parents." *M.E.*, 283 A.3d at 839 (cleaned up). Courts should also consider "whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *K.T.*, 296 A.3d at 1106. Finally, we also note that a child's "emotional needs and welfare include intangibles, such as love, comfort, security, and stability." *Id.*

In her second issue, Mother argues that the court abused its discretion pursuant to Section 2511(b) for failing to consider the impact of termination on the Child's emotional needs and welfare. Mother instead champions the importance of the Child's reunification with her and the further establishment by the Child of a relationship with the Child's siblings.[9] *See* Mother's Brief at 20-21.

Here, the court concluded that the Child does not have a necessary and beneficial bond with Mother. The court explained:

> Mother . . . has spent a significant portion of [the Child's] life incarcerated as a result of her drug addiction. The [c]ourt approximates that Mother spent about two (2) years in jail and the other time in drug rehabilitation or chasing her active addiction. . . . Mother did not have the benefit of living with [the Child] when she was out of prison, and therefore did not have the ability to passively interact with [the Child] while someone else parented him. [Mother]'s last interaction with [the Child] occurred approximately in July 2022, and she failed to make arrangements

---

[9] The Child has two older half-siblings through Mother who, at the time of the termination hearing, resided with their maternal grandmother. *See* N.T., 7/29/24, at 46, 91.

- 14 -

to see [the Child,] although there were [c]ustody [o]rders guaranteeing her the opportunity to visit and see [the Child]. As a result of Mother's absence from [the Child's] life, the evidence establishes that she has very little bond with [the Child].

Orphans' Court Opinion, 8/13/24, at 13. This conclusion is supported by the certified record.

It is undisputed that the Child, then nearly five years old, had been in the care of Paternal Grandparents since June 2020, just over four years, at the time of the subject hearing. In that time, the Child has only seen Mother approximately three or four times. *See* N.T., 7/29/24, at 12. Despite a custody order awarding her supervised physical custody of the Child, Mother only exercised one custodial period in the summer of 2022. *See id.* at 13-14, 40, 52-53, 55-56, 79-80, 82. Although Mother testified that Father had initiated one video call between her and Child in the spring of 2023, as well as a brief "visit" when he snuck her into Paternal Grandparents' home in the spring of 2023, Mother acknowledged that the Child did not know who she was. *See id.* at 91, 98-99, 101-103. Given this lack of contact, Paternal Grandparents testified that the Child neither recognizes nor asks for Mother. *See id.* at 14, 25, 74, 77. As such, Paternal Grandparents stated unequivocally that no bond existed between Mother and the Child. *See id.* at 25, 77.

Conversely, Paternal Grandparents have provided for the Child's daily needs, in Mother's absence. *See id.* at 75-78, 93. The Child has a "very good relationship" and "strong bond" with Paternal Grandparents, whom he calls

- 15 -

"Mama" and "Pap" or "Pappy." *Id.* at 26-27, 48-49. As Paternal Grandmother described, they are "one big happy family." *Id.* at 27. Further, Paternal Grandfather, stated of the Child, in part, "It's like he's my own child." *Id.* at 78.

Based upon the foregoing, we discern no abuse of discretion in the orphans' court's conclusion that terminating Mother's parental rights will serve the Child's developmental, physical, and emotional needs pursuant to Section 2511(b). While Mother may profess to love the Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citation omitted).

Accordingly, we affirm the order involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/28/2025